BAKONYI, APPELLANT, *v.* RALSTON PURINA COMPANY, APPELLEE.

[Cite as Bakonyi *v.* Ralston Purina Co. (1985), 17 Ohio St. 3d 154.]

(No. 84-812—Decided May 29, 1985.)

*Joseph L. Coticchia Co., L.P.A., Joseph L. Coticchia* and *William Vance,* for appellant.

*Bonezzi, Saurman & DeRosa* and *William D. Bonezzi,* for appellee.

CELEBREZZE, C.J. The substantive issue in this case is whether a seller of defective fertilizer, who purchases the liquid fertilizer in bulk, supplying some to its employees for use on the job and repackaging the remainder in small containers for public sale, is strictly liable in tort under the dual-capacity doctrine to an employee who is unintentionally injured in the course of employment while using the defective product or whether such a cause of action is barred by Ohio's Workers' Compensation Act.

## I

Under certain conditions a seller of a defective product who is not the manufacturer may be held strictly liable in tort for injuries caused by the product. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466]. In *Temple* we expressly adopted Section 402A of the Restatement of Torts 2d. *Id.* at 322.[1]

Paragraphs one and two of the syllabus in *Temple* state:

"1. *One who sells any product* in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"2. The rule stated above applies although the seller has exercised all

---

[1] As is noted in Prosser & Keeton, Law of Torts (5 Ed. 1984) 706-707, Section 100:

"The retailer is in a more favorable position to bear the costs of accidents due to the defectively dangerous products he sells than is the first purchaser for use. If the defect is one that is traceable to the manufacturer, the retailer may be more likely to get acceptance of financial responsibility without litigation than is the consumer purchaser. If the manufacturer is insolvent or is a corporation that has been dissolved, or if the defect is one that is not traceable to the manufacturer, the loss is one that can best be borne by the retailer as a cost of doing business."

possible care in the preparation and sale of his product, and the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Emphasis added.)

In contradiction to our holding in *Temple,* the court of appeals herein incorrectly held that "[s]ummary judgment was properly granted * * * because appellee was not the manufacturer of the product which allegedly caused appellant's injury." Accordingly, we find that the appellate court erroneously concluded that strict liability only extends to sellers who also manufactured the defective product which allegedly caused the injury.

## II

The remaining issue to be decided is whether this appellant may utilize the dual-capacity doctrine to attach strict tort liability to his employer for injuries received at the work place.

Undeniably in certain unique settings Ohio courts have attached tort liability to employers who can be regarded as acting in a dual capacity with respect to an employee. *Mercer* v. *Uniroyal, Inc.* (1976), 49 Ohio App. 2d 279 [3 O.O.3d 333]. In *Mercer,* the court noted at 283 that " '[t]he decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer.' " The court concluded that the alleged hazard was not necessarily one of employment, but was common to the public in general which severed the causal connection between the employment and the injury.

A consistent result was reached by this court in *Guy* v. *Arthur H. Thomas Co.* (1978), 55 Ohio St. 2d 183 [9 O.O.3d 138], where the syllabus provided:

"Where an employer-hospital occupies a second or dual capacity, as an administering hospital, that confers upon it traditional obligations unrelated to and independent of those imposed upon it as an employer, *an employee injured, as a result of a violation of the obligations springing from employer-hospital's second or dual capacity,* is not barred by either Section 35 of Article II of the Ohio Constitution or R.C. 4123.74, Ohio Workers' Compensation Law, from recovering in tort from that employer-hospital." (Emphasis added.)

However, it has more recently been noted that the dual-capacity doctrine is not without limit. *E.g., Simpkins* v. *Delco Moraine Div.* (1981), 3 Ohio App. 3d 275.[2] We recently refused to allow a policeman tort recovery

---

[2] In *Simpkins, supra,* the court held that an employee could not use the dual-capacity doctrine to reach an employer who had manufactured and provided a defective mobile hoist, not for public use or sale but solely for use by company employees. The court found the key to determining whether the doctrine was applicable is if the employer's status as a manufacturer generates obligations unrelated to those from his employer status. The court held that the employee's exclusive remedy fell under workers' compensation law.

from his city-employer on a theory that the city had failed to maintain public streets in *Freese* v. *Consolidated Rail Corp.* (1983), 4 Ohio St. 3d 5. This court noted at 12:

"* * * [I]n order for the dual-capacity doctrine to apply, there must be an allegation and showing that the employer occupied two independent and unrelated relationships with the employee, that at the time of these roles of the employer there were occasioned two different obligations to this employee, and that the employer had during such time assumed a role other than that of employer."

In the case *sub judice,* appellee purchased the liquid fertilizer for two purposes: (1) public sale, and (2) use in its greenhouse operations. To fulfill the second purpose it provided the product for use by its workers as a routine and integral part of its operations within its traditional capacity as a supplier of tools and equipment. *Simpkins, supra.*

The appellee was not a manufacturer of a product for public sale but rather was both a consumer and distributor. As such, the two purposes of appellee's use of the product had differing obligations attached to them. The appellant was injured by the employment use, not the public sale use. As we observed in *Freese, supra,* at 11: "* * * [W]hat must be determined is whether the employer stepped out of his role as such, and assumed another hat or cloak. If the facts would show the latter, the employer has accordingly assumed another capacity and also has assumed independent obligations to his employee unrelated to the obligations arising out of the employer-employee relationship." In this case, we find that appellee had not assumed another capacity to the appellant and that the employment relationship predominated.[3]

Since under the facts of this case the dual-capacity doctrine may not be used by the appellant, the action is precluded by the exclusivity provisions of Section 35, Article II of the Ohio Constitution, as implemented by R.C. 4123.74. Where the injury suffered in the course of employment is not intentionally inflicted the employee's sole avenue of recovery is through workers' compensation. See *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504]. Recently, this court observed: "Common-law damages are clearly unavailable under R.C. 4123.741 for injuries negligently inflicted by a co-employee in the course of employment." *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 100.

Allowing a cause of action in addition to the relief afforded by Ohio's Workers' Compensation Act is unwarranted where, as here, the injury is

---

[3] If an employer could be held liable in tort for such work-related injuries, absurd consequences could result. For example, a hardware store would have to purchase brand X hammers for public sale and brand Y hammers for use by its employees to avoid dual-capacity liability as a dealer. In this case, appellee would have had to purchase one brand of fertilizer for use by its greenhouse workers and purchase another brand for public sale to avoid work-related tort exposure to its employees.

caused predominantly by the employment relationship and not by an independent relationship between the parties.

In conclusion, we hold that a seller of a defective product, who purchases it in bulk, supplying some of the product to its employees for use in the course of employment and repackaging the remainder for public sale, is not strictly liable under the dual-capacity doctrine to an employee who is unintentionally injured in the course of employment while using the defective product. Such a cause of action is barred by Ohio's Workers' Compensation Act which provides the exclusive remedy for the injured employee.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

O'NEILL, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

O'NEILL, J., of the Seventh Appellate District, sitting for SWEENEY, J.